GLADNEY, Judge.
This suit was filed on behalf of Mrs. Lola Poland Burton against the Southwestern Gas & Electric Company for the purpose of recovering damages occasioned by personal injuries received in an automobile accident on February 5, 1957, within the city limits of Shreveport, Louisiana. Following a trial of the case on its merits the district judge rejected plaintiff’s demands and in doing so, assigned as his reasons for judgment: (1) That the proximate cause of the accident was the negligence of the driver of the car in which plaintiff was a passenger; (2) That there was no negligence on the part of V. L. Brandon, driver of the defendant’s vehicle; and (3) That if Burton could be considered negligent, then in such event Mrs. Burton was guilty of contributory negligence in allowing her son to drive without lights. Plaintiff has appealed from the judgment so rendered.
On the date of the accident, as above stated, in the latter part of the afternoon, Mrs. Burton went for a pleasure ride in a Ford sedan owned and driven by her minor son, James E. Burton, and the latter’s friend, Lawrence Bamburg. Mrs. Burton was seated on the front seat between her son and Bamburg. They left the Burton home some time after 5:00 o’clock P.M. and after riding about for some time they started east on Seventieth Street, a two-lane thoroughfare with pavement 25 feet in width and having five foot shoulders on each side. When the vehicle arrived at the “T” intersection of Seventieth Street with Bur-lingame Street, which enters Seventieth Street from the south, a collision occurred between the Burton automobile and a Ford truck owned by the defendant and driven by its employee, Brandon. The undisputed evidence shows that James Burton applied his brakes and the wheels of his vehicle skidded a distance of 36 feet before colliding with the truck at a point about 25 feet east of the intersection and in the proper lane of travel for the Burton car. In the ensuing collision the occupants of the Burton car received injuries and were taken to the Schumpert Sanitarium where they were treated by Dr. Otis Broyles.
Charges and counter charges of negligence are impleaded. V. L. Brandon is alleged to have been guilty of actionable negligence in driving onto the left side of the street and in making an improper turn before reaching the intersection, in not maintaining a proper lookout, in not keeping his vehicle under control, and by driving without lights and with mechanically defective brakes. Similar-charges were made against James Burton and alternatively, Mrs. Burton is said to have been guilty of contributory negligence in permitting her son to drive after dark without lights.
The evidence establishes that Brandon, who was traveling west along Seventieth Street, commenced the execution of a left turn into Burlingame when he arrived at a point about four car lengths east of the intersection and in so doing had crossed the center line and at least partially blocked the lane of travel assigned to oncoming vehicles. It is equally clear Brandon failed to see the approach of the Burton car until almost at the moment of impact, and was traveling at a low rate of speed of approximately five miles per hour. As pointed out above, the impact occurred at a point in Burton’s lane of travel about 25 feet east of the intersection. James E. Burton, at the time of the accident, had not turned on his lights, although Brandon had, and the preponderance of the testimony is his blinker signal for a left turn was being indicated. Also, the street lights which lighted up the intersection had already come on before the *64 occurrence of the collision. Officer Col-lingsworth of the Shreveport Police Department, who arrived shortly after the collision for the purpose of investigating the accident, testified the Ford sedan showed 36 feet of skid marks from the front wheels prior to the impact, but none with the rear wheels and gave his opinion the brakes on the rear wheels of the Burton car were not holding. The evidence fails to substantiate in any wise the defendant’s charges of negligence with reference to speed and failure of James Burton to maintain a proper lookout.
It cannot be doubted that Brandon was guilty of negligence by violating the provisions of LSA-R.S. 32:235, subd. B which enjoin a motorist when intending to turn to the left to approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning, to pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left. Instead of complying with this traffic rule, Brandon attempted to cut across a corner and in doing so improvidently invaded Burton’s traffic lane.
It is earnestly argued the driver of the Burton vehicle was negligent in not turning on his lights and that his failure to do so was the proximate cause of the accident. The occupants of the Burton car uniformly testified it was not sufficiently dark to require the lights of a motor vehicle to be on at the time of the impact. Evidence was likewise furnished which would indicate the accident occurred shortly after 6:00 o’clock P.M., despite the testimony of plaintiff’s witnesses that it occurred prior to 6:00 o’clock P.M. Mr. Parker, an official of the Southwestern Gas & Electric Company, testified the street lights automatically were turned on at dark by means of an electronic device. Following our careful review of all the testimony relating to the question of darkness, we find ourselves unable to determine the extent of visibility in the area not affected by street lights. Nor do we think it important to resolve this point, for the street lights and the lights of a number of other motor vehicles traveling at the time along Seventieth Street undoubtedly gave off a certain amount of illumination. In approaching the point of collision the Burton car had traversed the intersection and proceeded about 25 feet before arriving at the point of the impact. The area through which the car passed was illuminated by the street lights and the lights of defendant’s truck were likewise directed toward the approaching Ford sedan. Under these circumstances we are of the opinion V. L. Brandon would have seen the approaching Burton vehicle had he been looking. And we are certain had he timely observed the approach of young Burton’s car, he would not have invaded the wrong traffic lane. It is our finding, therefore, that the absence of headlights on the Burton car was not a proximate cause of the accident. We say this for the reason that we can find no reasonable excuse why Brandon did not see the approach of the unlighted Ford sedan.
It is our further conclusion the defendant has failed to establish its plea of contributory negligence resting upon the testimony of Officer Collingsworth that the skid marks of the Burton vehicle indicated its rear brakes were not holding. No satisfactory explanation is given by the officer as to how he arrived at this determination and we are unwilling to accept it as expert opinion evidence. The evidence, in fact, is directly contradicted by the testimony of James E. Burton and his father, who also drove the car, that the brakes were good and not defective. Our findings as hereinabove recorded exonerate James E. Burton from any act of negligence which can be said to have been a proximate cause of the collision.
Mrs. Burton in her original petition alleged injuries to the muscles, tissues, cartilage, nerves and bones in her chest, left leg and both arms. Approximately five months later she filed a supplemental and amended petition in which she alleged further injuries to the left hip, the neck, brain, eyes and back.
*65 Immediately after the collision Mrs. Burton, her son, and Lawrence Bamburg were driven to the Schumpert Sanitarium where they received emergency treatment from Dr. Otis Broyles, who was plaintiff’s family physician. X-rays were made which disclosed that Mrs. Burton had no fractures or bone injury and after treatment for multiple contusions of the chest, shoulder, knees and left leg, she was permitted to return home several hours after the accident. Thereafter she was treated or examined by Dr. Broyles on February 7th, 9th, 14th, 20th and 25th, and later on March 2nd and June 10, 1957. Subsequently she was examined or treated by Dr. James H. Eddy, Jr., on May 24, 1957, Dr. Willis J. Taylor on June 18th and June 28, 1957, Dr. Heinz K. Faludi on July 2, 1957, Dr. Ford J. Macpherson on August 30, 1957, and Dr. Gene D. Caldwell on January 14, 1958.
Dr. Broyles testified as to his findings which he said indicated no bone pathology, but he determined that she sustained multiple contusions to the chest, shoulder, knees and left leg. Her condition, in his opinion, did not require hospitalization, but he considered her as totally disabled from her injuries as of his examination of March 9th, at which time she returned to his office because of an upper respiratory infection, which was not attributable to the accident. He further testified Mrs. Burton made no complaint of injury to her back until she came to see him on June 2nd, at which time she complained of pain in the lumbar region of her back which she said had been present for about four weeks.
At the request of defendant, Mrs. Burton was examined by Dr. James H. Eddy, Jr., on May 14th and the late Dr. Gene D. Caldwell, orthopedist, on June 14, 1957. Both of these doctors found no evidence of injury to the back, neck or chest. Dr. Eddy found a full range of motion in the lumbar back. He concluded there was no disability present and he anticipated no further disability or discomfort related to the accident. When Mrs. Burton began to complain of her back in June, she was sent by Dr. Broyles to see Dr. Willis J. Taylor, an orthopedist, by whom she was first examined on June 18, 1957. At that time there was visible to the physician an area of discoloration on the front and outside of the left arm just above the elbow, and Mrs. Burton complained of tenderness at several places upon the back where pressure was applied. Although muscle spasm was not present, a fifty per cent limitation in motion was indicated, which the doctor thought was of a voluntary nature. After completing the customary standard orthopedic examination, he concluded there was no evidence of injury, disease or disability attributable to the accident.
On July 2, 1957, Mrs. Burton was examined by Dr. H. K. Faludi, neuro-surgeon of Shreveport. Upon the suggestion of Dr. Willis J. Taylor, he extended a complete neurological examination and reached the conclusion his examination was not “too remarkable, except for moderate tenderness in the lumbosacral region.” The doctor was convinced that plaintiff had sustained no permanent injury.
Another orthopedic examination was administered on August 30, 1957, at this time by Dr. Macpherson. The standard orthopedic examination was given with the opinion expressed that Mrs. Burton had spondylolisthesis of the first degree. This, he said, was evidenced by a slipping of the fifth lumbar vertebra. Beyond this finding, Dr. Macpherson found the complaints of the patient were entirely subjective and were being grossly exaggerated. With respect to the spondylolisthesis it was pointed out to him that his opinion was contrary to that of Drs. Eddy and Taylor. This apparently caused the doctor to suggest the slipping of the fifth lumbar vertebra could have occurred after the examination by Dr. Eddy on May 14, 1957.
At the request of the defendant, an examination of Mrs. Burton was made by Dr. Gene Caldwell, orthopedist, on January 14, 1958, who, after subjecting the patient to a complete orthopedic examina *66 tion, found no evidence of disability or injury. Dr. Caldwell disagreed with the findings of Dr. Macpherson as to the presence of spondylolisthesis. Dr. Caldwell stated the patient’s symptoms were entirely subjective in nature and in his opinion exaggerated. He said he was unable to find any positive, objective or clinical evidence of disability.
There can be no contradiction in the finding from the evidence that Mrs. Burton sustained multiple contusions and bruises. These, however, were not so serious as to require suturing or hospitalization. Plaintiff remained more or less in bed at her home for a period of about two weeks. While under treatment for her complaints of back injury, she was fitted with a brace which she wore for a considerable period of time. After two weeks from the accident she was able to do her housework. It does not appear that her injuries were so extensive as to require visitation at her home by Dr. Broyles or other physicians.
A résumé of the medical testimony entirely supports the finding that plaintiff has failed to establish the existence of any permanent disability to her back or other bodily injuries of a lasting nature. It is our opinion the evidence reflects plaintiff grossly exaggerated her symptoms to a number of the examining physicians. Notwithstanding this unfortunate incident, we are certain plaintiff did suffer a certain amount of shock, pain and inconvenience from the injuries received in the accident.
We have taken occasion to note in former opinions that in the determination of damages for personal injury, our courts have frequently pointed out much discretion is left to the judge or jury and such determination should not be disturbed except for serious and manifest error. Certainly no definite rule for the measurement of damages in personal injury actions can be applied to fit all occasions, but each case must be determined from its peculiar facts. It is, however, the desire of the courts to maintain a degree of uniformity in awards so far as it is possible to do so. Within recent years, however, this court has given more consideration to certain determining factors with the result that personal injury awards have been larger than those involving similar injuries as reflected in cases decided ten or more years-ago. The decrease in the purchasing power of money has had, perhaps, the greatest influence upon this trend. Pain and suffering and injuries involving physical and mental functions, of course, cannot be easily measured in terms of money. Such injuries can never be said to be adequately compensated, nor can the courts comprehend differences- in the suffering of individuals. All of these considerations point up to the conclusion that no complete uniformity in awards can be expected and a large amount of discretion therein should be vested in the court. Roberts v. Fidelity & Casualty Company of New York, La.App.1956, 90 So.2d 527.
Appellant and appellee have cited a number of cases for the purpose of assisting the court in arriving at the proper award which should be allowed Mrs. Burton. For the reasons- hereinabove stated, we think nothing would be gained by a complete review of all the citations, but we shall content ourselves with pointing out that Le Bourgeois v. Indiana Lumbermens Mutual Insurance Company, La.App. 1958, 101 So.2d 720; Baird v. Employers’ Liability Assurance Corporation, Ltd., La. App.1949, 38 So.2d 669, and Paggett v. Travelers Indemnity Company, La.App. 1957, 99 So.2d 173, all involve injuries of a much more serious nature than is indicated by the medical evidence in the instant case. The amount awarded in the Le Bourgeois case of $9,000 was- predicated on a finding that the accident had caused the 84 year old plaintiff to have an aggravation of a general arthritic condition, a serious loss of motion in the fingers of one hand, and a persistent neurotic condition. The award made to Mrs. Baird of $12,000 was for an injury to the shoul *67 der, a rupture of intervertebral discs which also brought on degenerative hypertrophic changes, and impairment of the use of the left arm. In the case of Paggett v. Travelers Indemnity Company, Lillie Mae Pag-gett sustained a whiplash injury which was so severe that she was suffering from it for more than a year afterward, and it was the opinion of medical experts that a future operation would be required. The award of $3,000 therein made included the sum of $1,000 which was made for multiple abrasions and contusions. We think an award of $1,250 on account of injuries suffered by Mrs. Burton will do substantial justice. In making this award, we are convinced that she will sustain no permanent injury and that she was comparatively free from the effects of the accident at the time of trial on January 16, 1958, less than a year after the accident occurred.
Counsel for appellant has suggested in brief that the general expert witness fees of Drs. Faludi and Macpherson should be fixed at $100 each. We have on recent occasions noted the standard expert medical fee observed by the District Courts of Caddo Parish is the sum of $50 for each medical expert. The record reflects that Drs. Faludi and Macpherson were not unduly interrupted from their professional routine and we find no occasion to depart from the rule we have heretofore observed. It will be proper, however, to fix the witness fee of these experts at $50 each.
The judgment from which appealed is hereby annulled, reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of Mrs. Lola Poland Burton against the Southwestern Gas & Electric Company in the sum of $1,250 with legal interest thereon from judicial demand.
It is further ordered that the fees of Drs. F. J. Macpherson and H. K. Faludi, expert medical witnesses who testified on behalf of appellant, be and the same are hereby fixed at $50 each, and taxed as cost. It is further ordered that the defendant, appellee, Southwestern Gas & Electric Company, be cast for all costs of this suit, including cost of the appeal.