LOTTINGER, Judge.
This is a suit for personal injuries to petitioner which resulted while he was riding in an automobile driven by defendant, Wilton H. Gillen. The petitioner is Clint L. Pierson, a guest passenger, and the defendants are Wilton H. Gillen, the driver, and his insurer, Hartford Accident and Indemnity Company. The Lower Court rendered judgment for petitioner and against the defendants jointly and severally in the amount of $7,740.00. The defendants have appealed and the plaintiff has answered same.
The facts disclose that on December 29, 1956 the petitioner and his son were invited on a hunting trip by the defendant, and the three went to the hunting camp which was owned by the defendant and which is situated in the Parish of Pointe Coupee, Louisiana. Early on the day of the accident the petitioner and defendant had taken petitioner’s son to a hunting blind and had returned to the camp for lunch. At approximately 4 o’clock on the afternoon of December 30th, petitioner and defendant were driving along a gravel road in a Jeep; the purpose of the trip was to pick up the petitioner’s young son. After having driven for a distance of approximately % mile, the defendant, who was driving the Jeep, noticed a group of Negroes on the side of the road at a distance of five or six hundred feet in the front of the Jeep. Among the Negroes he saw a young boy and a dog. Upon proceeding further, and while still at a distance of one hundred fifty to two hundred feet from the group of Negroes, the defendant stated that he thought the dog and the young boy were getting ready to run out into the road, and so he immediately swerved to the right and took to the ditch on the right hand side of the road, which ditch was described as a “swale ditch” by petitioner. At the time, the petitioner was grasping the iron rod which holds the canvas top on the Jeep with his right hand, and his arm was protruding downward on the right side of the Jeep. Although there is some dispute as to whether or not the arm of petitioner was outside the body of the Jeep, the weight of the evidence indicates that his arm was either inside the body of the Jeep or even with the right side body of the Jeep. As the car entered the ditch in an effort to avoid any possibility of hitting the child and his dog, the right side of the Jeep passed along some bushes which were overhanging the ditch, and the petitioner suffered injury to his right arm. After the occurrence of the injury, the defendant driver swerved back to the left and proceeded along the road for some short distance and then came to a stop upon being told by petitioner that he had hurt his arm.
The record discloses that immediately prior to the accident the defendant was driving at a speed of twenty to thirty miles an hour. He made no attempt to stop the Jeep upon noticing the boy and the dog; his only maneuver to avoid a possibility of striking was to swerve to the right into the ditch and then back to the left in an attempt to go around them. The petitioner, who was riding on the right hand side of the front seat, did not notice the boy and the dog prior to the accident.
After the accident petitioner and defendant continued down the road for a, distance until the Jeep developed engine trouble and, as they were unable to repair the engine, the petitioner and defendant spent the night in the woods. It was not until the next day that petitioner was able to secure medical treatment for his injured arm.
*467 At approximately 4 to 5 o’clock in the afternoon of December 31st, 1956 the petitioner was examined by Dr. Thomas Camponella, an orthopedic surgeon of the city of Baton Rouge. Dr. Camponella diagnosed the injury as a “complete oblique fracture of the ulna and a hairline fracture of the styloid process of the radius.” Petitioner’s right arm was put in a cast which ran from the middle of his palm up past his elbow. The cast completely immobilized the arm except for the shoulder joint. The cast remained on petitioner’s arm for a period of 2i/z months.
At the time of removal of the cast on March 14, 1957 Dr. Camponella found that the fractures had sufficiently healed and advised the petitioner to exercise the arm and hand.
Subsequent to the removal of the cast, the petitioner has complained of pain and disability in his right wrist. He claims that his wrist pains him when he plays golf, when he fishes or goes hunting. Petitioner testified that if he were to play golf today his wrist would become sore and stiff and he would not be able to play golf again for a period of two or three days. Dr. Camponella examined petitioner on the day before the trial and testified that there was a little bulging in the wrist, and that he would guess there is a five to ten per cent disability in the wrist. He stated that there was a possible injury to the cartilage which could be repaired through surgery. Dr. Camponella testified that the recovery of petitioner was normal.
On April 7, 1957 the petitioner was examined by Dr. J. Willard Dowell, an orthopedic surgeon. Dr. Dowell stated that petitioner was claiming soreness in his right wrist and that the wrist was slightly swollen. He stated that there was a slight limitation of movement in the wrist which could possibly be a result of the cast which petitioner had worn for some months. He estimated the disability at five per cent and said that there might possibly be some permanent disability. At the time of the trial, Dr. Dowell examined petitioner’s wrist and testified that it was slightly swollen. Dr. Dowell testified that the injury had healed satisfactorily and that petitioner could fish, play golf and hunt, but might have some slight discomfort.
The Lower Court, although we are not favored with a written opinion, evidently found the proximate cause of injury to petitioner to be caused by the negligence of the defendant. We certainly believe that the Lower Court was correct, as such a finding is justified by the great weight of the evidence.
The defendant himself testified that when he was at a distance of one hundred fifty to two hundred feet from the small boy that he believed the boy might run out in front of the Jeep. Upon this assumption the defendant immediately swerved his Jeep to the right in order to avoid striking the boy in the event the boy did run into the road. Defendant testified that he had rather go around the boy than come to a stop. Certainly the defendant had ample opportunity either to slow the speed of his Jeep or come to a complete stop long before reaching the boy and the dog. The defendant himself testified that the boy did not run out into the road, or that he did not see the boy run out into the road The negligent action on the part of defendant was not the result of a sudden emergency as is claimed by defendant. Considering the great distance separating the Jeep and the boy at the time that defendant took to the ditch, the doctrine of “sudden emergency” would not apply to this case.
The defendant claims that the petitioner was guilty of contributory negligence in having his arm extended outside the Jeep. However, the defendant admitted on the stand that the party riding on the right hand side of the Jeep normally places his hand and arm in the same position as was the hand and arm of petitioner at the time of the accident. Petitioner did not see the boy prior to the *468 accident and we do not believe that he could possibly be held negligent under the facts of this case. We likewise believe that the defendant’s claim that he anc petitioner were on a joint venture must fail. The testimony discloses that the pe-titoner was a guest of the defendant at a camp which was owned by defendant’s company. In order to qualify as a joint venture, there must not only be a joint interest in the object of the enterprise, but also an equal right to direct and control the conduct of each other in the operation of the conveyance. Squyres v. Baldwin, 191 La. 249, 185 So. 14.
It is our opinion that the injuries were caused solely through the negligence of the defendant. Such was the finding of the Lower Court, and we certainly do not find any error by the Lower Court.
As to the matter of quantum, the Lower Court awarded the petitioner a judgment in the amount of $7,740.00. Of this amount, $240 comprised the medical expenses which were proven at the trial of the matter. The remaining amount of $7,500 was for pain and suffering, as well as disability. Petitioner is an attorney at law and he did not ask for loss of income.
We have no doubt whatsoever that the injuries to petitioner did pain him for some time. When he first saw Dr. Camponella his arm was swollen and was also black. He wore a cast for two and one-half months, and has suffered some pain on occasions as well as some restriction in the movement of his wrist until the date of the trial, which was some sixteen months after the date of the accident.
There, of course, is no set rule for deciding quantum. The amount of recovery for personal injury in each particular case must be determined upon the particular facts of the case. It is our opinion that the award of the Lower Court for pain, suffering and disability in the amount of $7,500 was excessive, and same will be reduced to the sum of $3,500. The award of $240 for medical expenses will remain.
For the reasons hereinabove assigned, the judgment of the Lower Court is amended so as to reduce the quantum thereof to the sum of $3,740, and, as amended, said judgment is affirmed.
Judgment amended and affirmed.