HERGET, Judge.
This is a suit by plaintiffs, Mr. and Mrs. Yves Percle, against defendants, Lawrence P. Ordoyne, and his public liability insurer, The Travelers Indemnity Company, seeking damages (1) for the loss of their minor son, Gary Percle, age 12, by accidental death, and for funeral charges for the burial of Gary; and, (2) for physical injuries suffered by Mrs. Percle and medical expenses for her treatment of such injuries. These damages were allegedly sustained by Plaintiffs on July 27, 1959 in a boat accident. Following trial of the case, for written reasons assigned, the Trial Court award *903 ed judgment in favor of Mr. Percle in the sum of $10,630.50 and in favor of Mrs. Percle in the sum of $11,250 against both Defendants, jointly and in solido. From this judgment Defendants appealed suspen-sively to this Court.
Plaintiffs and their two sons had been invited by defendant Ordoyne to accompany his family on a camping trip at his camp which could only he reached by boat. Mr. Ordoyne owned a 16-foot boat powered by a 35 horsepower Mercury outboard motor. The boat had been built for said Defendant and he purchased the motor from, arid had same installed by, a third party. One week prior to this accident Mr. Ordoyne, while operating the boat iri the same canal, struck a submerged object with the propeller, in consequence of which the transom of his boat was cracked. In order to strengthen the transom, Defendant Ordoyne himself attached an aluminum plate to the inside of the transom and employed Mr. Roland Toups, who had originally installed the motor, to place extra braces on the transom to make same more secure. There is testimony in the record to the effect that upon completion of the installation of the braces Mr. Toups questioned Mr. Ordoyne as to the removal of the aluminum plate he, Or-doyne, had installed, though the evidence does not reveal positively Mr. Toups suggested to Mr. Ordoyne the impropriety of having .the metal plate, on the transom. However, when Mr. Ordoyne removed the boat from Mr. Toups’ place of business, Mr. Toups cautioned Mr.- Ordoyne to.keep the set screws, which served to clamp the motor on the transom, well tightened.
On the date of the accident Mr. Ordoyne and his family with the assistance of the Percies launched the boat. The outing party was composed of four adults and.four children. There were two seats in the boat extending across the width thereof. When the parties boarded the boat Gary Percle occupied'a recessed portion of the bow but, in- order to trim the weight of the boat, Defendant Ordoyne instructed Gary to sit on an ice box back of the rear seat in the stern and, of course, adjacent to the motor.
The pleasure-outing party departed from Grand Bayou in what is known as the Main Canal in Lafourche Parish with Mr. Or-doyne operating the boat and had traveled some one-half to three-quarters of a mile downstream when the motor struck a submerged object. In what has been described by the witnesses as a split second, the motor became disengaged from the transom, flipped over into the boat and with the propeller still moving struck Plaintiffs’ son on the head, killing him instantly and injuring Mrs. Percle who was seated on the rear seat.
Plaintiffs, in their petition, maintained the doctrine of res ipsa loquitur was applicable, but, in the event said doctrine should not be apropos, alleged defendant Ordoyne was guilty of the following acts of negligence:
“1. Failure to have his outboard motor properly mounted on and secured to his boat hull.
“2. Failure to bolt said motor to the ■ boat hull in the places provided therefor.
“3, In fastening the motor clamps against a thick cast aluminum plate mounted to the transom of the boat.
“4.' Failure to properly and sufficiently tighten the motor unto the boat hull'.
-“5. In ordering Gary Percle from a place of safety in the front portion of the boat to sit on an ice box in the rear of the last seat in the boat and immediately next to said motor.
. “6. In failing to securely clamp said •motor against a soft shoe or pad . between the clamps and the rear end of his boat hull.”
Defendants, in their answer, denied the applicability of the doctrine of res ipsa *904 loquitur; denied any negligence on the part of Defendant; and, in the alternative, pled contributory negligence on the part of Plaintiffs
In an exhaustive and well reasoned opinion in which we are in full accord, the Trial Court concluded this unfortunate accident was occasioned by the negligence of Mr. Ordoyne in placing this aluminum plate on the inside of the transom, thereby making it impossible for the cups which form the base of the set screws securing the motor to the transom to become firmly fastened. In reaching this decision it considered the testimony of the witnesses and a personal inspection of the boat and especially the aluminum plate installed on the inside of the transom. So that the result of such inspection would be recorded, the Court dictated its observations in the record. In its examination. of the plate subsequent to the accident, the Court found only slight scratches on the aluminum plate and concluded the cups- of the clamp had not been embedded in the aluminum, thereby permitting additional strain on the set screws and permitting the motor to become disengaged from the boat. As a consequence of this faulty handiwork, when the motor struck the submerged object the clamp securing the motor to the transom moved upward placing additional stress on the set screws and caused the left one to break freeing the motor thereby permitting it to be abruptly catapulted into the boat and cause this regrettable accident. The testimony reveals this particular motor has holes in the clamp which may be utilized for the purpose of bolting the clamp to the transom of the boat. Without question such installation would make same far more secure and, in fact, subsequent to this accident the motor was bolted to the transom. From the testimony offered, however, on the motor involved in this accident it appears this procedure was not followed in the installation of same and the' specifications of the motor manufacturer do not require it.
The Trial Court correctly refused to give application to the doctrine of res ipsa loquitur for the reason there was direct evidence which he believed, and which we believe, Mr. Ordoyne negligently placed the aluminum plate on the inside of the transom of the boat, in consequence of which the clamp slipped. In Bauer v. Columbia Casualty Company, La.App., 126 So. 2d 398, one of the elements essential to bring into operation the doctrine of res ipsa loquitur is “the absence or unavailability of direct evidence of negligence, * *
The Trial Judge correctly, and we are in accord with his reasons and adopt same as our own, disposed of the special defenses raised by Defendants, in these words:
“Turning now to the special defenses raised by defendants, the first being that of ‘joint venture’. The testimony clearly establishes that plaintiffs were guests of defendant Ordoyne, and had no control or right to direct the conduct of defendant Ordoyne in the operation of the boat. The defense of ‘joint venture’ is therefore not applicable to the facts of this case. Pierson vs. Hartford Accident and Indemnity Co., [La.App.] 107 So.2d 465.
“The next special defense is that of ‘assumption of risk’ by the plaintiffs. There is nothing dangerous per se in riding in a boat. The particular boat involved was new and in apparent good condition. Plaintiffs had no knowledge or warning of the manner in which the motor was fastened to the boat. Nor was it apparent to them that the motor was not securely fastened. Under these circumstances the Court holds that the defense of assumption of risk does not apply in this case.
“The last of the special defenses urged by defendant is contributory negligence The record is void of any testimony that would establish any negli *905 gent acts on the part of plaintiffs. The record, however, conclusively establishes that plaintiffs had nothing to do with the boat, fitting the motor into the transom of the boat, installing the aluminum plate, tightening the motor unto the boat hull, or supervising the seating in the boat. Defendants have failed to establish any negligent act on the part of plaintiffs and the plea of contributory negligence must therefore .be denied.”
As to quantum, it was stipulated by counsel proof of the items of $597 for burial expenses for their son Gary and for the sum of $33.50 representing the medical expenses incurred by plaintiff, Yves Percle; for the treatment of his wife’s injuries could be made upon production of bills from the respective creditors for those amounts. ' Such offerings were made and the Trial Judge accordingly rendered judgment for said sums. In the petition of Plaintiffs, though the itemization of damages sustained by Plaintiff Yves Percle was $10,000 for loss of love and affection of the minor son, $33.50 to Doctor Joseph Powell for professional treatment of Mrs. Per-cle and $597 to Thibodaux Funeral Home for the expenses of the burial of Gary Percle, the total shown therefor in the petition is $10,630 (an error in addition is apparent) and the prayer of the petition is for the sum of $10,630 due Yves Percle. Defendants, in their brief, state: “ * * * This is $.50 more than the demand, but the $.50 extra is not the reason for our displeasure. * * * ” Apparently, therefore, •they abandoned any contention in this respect. Nevertheless, as the offerings properly made without objection warrant the judgment of the Trial Court, same will not be disturbed. Counsel for Defendants, in their brief, raise no question as to the quantum of $10,000 awarded to each Mr. and Mrs. Percle for the loss of the love, affection and companionship of their son and we are satisfied such awards are fair and commensurate with the jurisprudence ■of this State. Likewise, counsel for appellants make no complaint as to the quantum of the award of $1,250 to Mrs. Percle for the physical injuries she received in this accident. The evidence reflects such injuries consisted of multiple lacerations on the left forearm and severe contusions of the left front chest and left elbow. It was necessary to take twenty stitches in the left forearm. Mrs. Percle was under the doctor’s care from July 27 to August 3, 1959 and the doctor estimated the bruises sustained by her would take a month to heal and her disability would be from two to four weeks. In fixing this quantum the Trial Court relied on the case of Burton v. Southwestern Gas and Electric Company, La.App., 107 So.2d 62. We are in accord.
Judgment affirmed.