HARDY, Judge.
This is an action by plaintiff individually and for the use and benefit of his minor ■son for damages arising from personal injuries sustained by the said minor, Gary Keith Ratcliff. From judgment in favor of plaintiff individually in the sum of $1,035.-39, and for the use and benefit of the minor in the sum of $2,500.00, both plaintiff and defendant have appealed.
The accident which is the basis for this action occurred on Caney Lake in Webster Parish about 5 :00 o’clock in the afternoon of Sunday, March 15, 1964, at which time Gary Ratcliff, fourteen years of age, was a guest passenger in a motorboat owned by Major Herbert C. Gore, defendant’s assured, and operated by his fifteen-year old son, Robert Gore. The boat was a fifteen-foot cruiser powered by a 75 H.P. outboard motor. The seating arrangement consisted of two seats athwart the boat fitted back to back and located behind the dashboard and in front of the motor assembly. On or about the day before the accident the rear seat had been removed for upholstering, leaving exposed two metal studs or angle irons just behind the front seat.
At the time of the accident the boat had just taken off from the lake bank for the purpose of crossing the lake. The two young boys, who were the only occupants, were sitting on the top of the backrest of the front seat with their feet on the seat, young Gore being on the right operating the boat and young Ratcliff on the left. After proceeding a comparatively short distance from the bank, the boat crossed the wake of another motorboat which had passed some 100 feet in front, and as it struck the wake the boat lurched violently, throwing young Ratcliff backward from his position with such force that he was impaled upon the exposed left stud or angle iron of the rear seat, causing severe and exceedingly painful injuries to the rectal area of his body.
Negligence was charged against defendant’s assured in permitting the use of the boat with the metal studding exposed in such manner as to create a dangerous condition; permitting the minor boys to operate and ride in the boat while seated on top of the backrest of the front seat without warning them as to the danger; and in using a motor generating power beyond the safe capacity of the watercraft involved. The principal charges of negligence against the minor, Robert Gore, were alleged failure to maintain a proper lookout and adequate control and negligent operation, particularly in accelerating the speed of the boat simultaneously with the crossing of the wake of another boat.
Defendant’s answer, after generally denying the plaintiff’s allegations of negligence, specifically asserted pleas of contributory *60 negligence and assumption of risk as against Gary Ratcliff. The charges of negligence were directed against the actions of young Ratcliff in riding on the backrest of the front seat in a dangerous position without proper support, and in failing to take proper precautions to protect his person and guard himself against “the obvious physical set-up in the boat.”
Before this court counsel for defendant strongly urges the three phases of defense evidenced by his pleading, namely, lack of negligence on the part of defendant’s assured ; contributory negligence and assumption of risk by the minor, Gary Ratcliff.
After study of the record we have had no difficulty in reaching the conclusion that defendant’s assured was guilty of gross negligence in permitting the use of the boat in a condition which clearly constituted a serious potential danger, and in allowing the teen-age boys to ride in a dangerous position without warning them against such action, or, indeed, without forbidding them to ride in such a position. In this connection, we think it appropriate to observe that there is a substantial obligation imposed upon the adult owner of any vehicle, possessed of mature judgment, discretion and experience, to carefully supervise the actions of others, particularly teen-age children, who cannot be charged with a similar understanding and recognition of the possibility of danger.
It should have been obvious that the operation of a high-powered motorboat by a young boy while seated upon the top of the backrest of the front seat was dangerous both to himself and any passengers in the boat. It is clear that this position was necessarily taken in order that the boys might have a clearer view over the front of the boat than would have been possible if they had been properly seated. This conclusion is established in the testimony of young Gore who was asked the reason for his position and answered:
“So I could see over the boat — over the bow of the boat.”
We are also firm in the opinion that the testimony justifies the finding of negligence with reference to young Gore’s operation of the boat. There is a conflict in the-testimony of the two boys as to the exact manner of occurrence of the accident. Gary Ratcliff testified that young Gore first decelerated the speed of the boat on approaching the wake then accelerated to-full speed at the moment the boat hit the-wake of the other craft. To the contrary, Gore testified that he neither decelerated nor accelerated the speed of the boat as he approached and crossed the wake. If there was no other basis for a conclusion except this contradictory testimony, it could not be said that plaintiff had established this, charge of negligence. However, it was the testimony of both boys that on a number of occasions during the afternoon they had crossed the wake of other boats without incident. Gore admitted in his testimony that as the boat hit the wake it gave an unusual' lurch which he could not explain. We think the only explanation is justified on the basis of Gary Ratcliff’s testimony which, therefore, must be accepted. Only the violation of the duty of ordinary care in the operation of the boat under the conditions described could have resulted in an impact of the degree of force and violence which occurred.
The liability of defendant’s assured is; established by statute under the provisions-of the “Uniform Pleasure Boating Act” asset forth in L.R.S. 34:850.1, et seq. The title of the Act clearly declares its purpose as intended to provide for the protection and' promotion of safety in the operation of motorcraft engaged in recreational boating, and Section 850.24 clearly establishes the owner’s responsibility in the following words:
“The owner of a watercraft shall be liable for any injury or damage occasioned by the negligent operation of such watercraft, whether such negligence consists of a violation of the provisions of the statutes of this state, *61 or in the failure to observe such ordinary care in such operation as the rules of the common law require.”
Even without negligence on the part of the operator of the boat, we think the owner would be liable under the factual circumstances of this case on the authority of Percle v. Ordoyne (1st Cir., 1963, writs denied), La.App., 150 So.2d 902. The cited case did not involve any issue as to the negligence of operation but the court approved recovery by plaintiffs on the ground that the owner was guilty of negligence by reason of the faulty and insecure installation of the motor.
We also find appropriate the general rule of admiralty law that an owner is responsible for the seaworthiness of a vessel which must be “fit in the eyes of the law for the life and limb of those who go down to sea in ships.” Words and Phrases, Permanent Edition, Volume 38, verbo “Seaworthy; Seaworthiness.” page 412 and pocket parts; Walker v. Harris (U.S. C.A. 5th Cir., 1964, writs denied), 335 F.2d 185.
Turning to the special defenses of assumption of risk and contributory negligence, we find that the former is covered by an observation of the court in the opinion of the Percle case, supra:
“There is nothing dangerous per se in riding in a boat. * * * Plaintiffs had no knowledge or warning of the manner in which the motor was fastened to the boat. Nor was it apparent to them that the motor was not securely fastened.”
While the exposed condition of the metal studs was apparent, this did not constitute an obvious danger to a teen-age guest who was permitted to ride in the boat without any warning or caution on the part of the owner.
The plea of contributory negligence is largely based upon the argument that Gary Ratcliff was seated on top of the backrest of the front seat and was not properly supporting himself against the danger of being thrown from this position. The proof on this point is not sufficient to support the conclusion of contributory negligence, although young Ratcliff, subjected to a searching cross-examination, testified that he was not holding on. The correctness of this testimony is doubtful in view of his testimony under repeated cross-examination that he did not remember what he was doing with his hands. It is further to be noted in this connection that young Gore testified that Ratcliff was holding onto the seat with his left hand. In any event, Ratcliff was unaware of any danger which required him to support himself, since the uncontroverted testimony of both boys was to the effect that they had crossed the wakes of other boats without incident numerous times. It was the force of the impact with the wake and not the failure to support himself which caused the fall.
It is elemental that the plea of contributory negligence constitutes an affirmative defense which must be established by a preponderance of the evidence. Defendant has not discharged this burden in the instant case.
Plaintiff’s appeal is directed at what he contends to be error on the part of the trial court in fixing a grossly inadequate award for the pain and suffering sustained by young Ratcliff. No issue is presented as to the allowance made in the judgment for expenses on the part of plaintiff individually.
The nature and effect of the injuries sustained by plaintiff’s minor son are so unpleasant that we will avoid unnecessary recapitulation, of all of the details. It suffices to say that young Ratcliff was removed to the Minden Sanitarium where he received emergency treatment. The injuries primarily consisted of three extensive lacerations of the anal canal and the perianal area, varying in length from approximately one to three inches caused by the impaling injury effected by the severe contact with the *62 angle iron of the back seat of the boat. Some seventy-five sutures, more or less, were required for the closure of the wounds. On the third day plaintiff was removed to the Schumpert Hospital in Shreveport and three days later an examination under general anesthesia indicated the presence of an abscess in the interior rectal area. An operation was performed for the purpose of draining the abscess. The lacerations involved both the internal and external spincter mechanisms, the latter being almost completely severed by the wound. After some two weeks hospitalization young Ratcliff was returned to his home and for a period of time was incapacitated from the performance of normal activities. He returned to school some five weeks after the accident but was unable to make up the time lost from his studies and failed three subjects. With remarkable candor Gary voluntarily expressed the opinion that he would have failed one of these subjects, in any event, but he thought failure of the other two was due to his absence.
There can be no question as to the unusually severe degree of pain which was suffered for a period of weeks and the intermittent pain and the persistent discomfort which continued for an additional period of some six to nine months. The fact that young Ratcliff appeared to bear the pain with almost Spartan courage does not detract from its degree and extent.
After careful consideration of all of the testimony with respect to the injuries involved, we have concluded that the award made by the district judge is substantially inadequate and should be materially increased.
For the reasons assigned the judgment appealed from is amended to the extent of increasing the amount awarded in favor of Bill}’- C. Ratcliff for the use and benefit of the minor, Gary Keith Ratcliff, to the principal sum of Five Thousand and No/100 ($5,000.00) Dollars, and as so amended it is affirmed at the cost of defendant-appellee.