No. 19,892.

ROBERT LOUIS STEVENSON *v.* THE PEOPLE OF THE STATE OF COLORADO.
(367 P. [2d] 339)

Decided December 11, 1961.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

ROBERT LOUIS STEVENSON and George Whitesel were jointly charged by direct information with the burglary on September 28, 1960, of the home of George and Esther Homedew, and in a second count with conspiracy to commit this burglary. Stevenson pled not guilty and was tried separately from Whitesel. Upon trial, at the conclusion of the People's evidence, Stevenson moved for a directed verdict of not guilty on both counts of the information. This motion was denied; whereupon Stevenson announced he "would not put on any evidence" and renewed his motion for a directed verdict. This time the trial court granted the motion as to the second count of the information charging conspiracy, but denied the motion as to the burglary charge. The jury thereupon found Stevenson guilty of burglary and on this verdict the court entered a judgment and sentence of three to five years in the state penitentiary.

In his motion for a new trial Stevenson urged that the evidence was insufficient to sustain the conviction. By writ of error he now seeks reversal of the judgment and sentence entered on this verdict.

Careful examination of the record convinces us that

the evidence is insufficient to sustain the verdict and that the judgment must be reversed. To demonstrate this insufficiency it becomes necessary to at least briefly review the evidence relied upon by the People.

At the outset it should be noted that there is no direct evidence which ties Stevenson into the burglary of the Homedews' residence. No one saw Stevenson commit the burglary and upon interrogation after his arrest he did not confess nor in any wise admit commission of the offense. Rather, the evidence is wholly circumstantial in nature, and in this regard it is the contention of the People that Stevenson "possessed" certain articles which were stolen in the burglary, and that his "possession" being recent, exclusive, and unexplained is a circumstance sufficient to support the verdict of the jury.

What are these circumstances which the People contend not only unerringly point the finger of suspicion at Stevenson but clearly establish his guilt beyond all reasonable doubt? In the burglary of the Homedews' residence numerous household articles were stolen, including such diverse things as an electric refrigerator, a TV set, several Japanese rifles, a 410 shotgun and a Zippo cigarette lighter. Most of these articles were subsequently located in two houses located side by side on a 40 acre tract some three miles east of Fruita. These two houses were owned by one Smith, who resided in Fruita.

Although Smith owned these two houses, he testified that on August 11, 1960, he rented both to George Whitesel. On this occasion Stevenson accompanied Whitesel to the Smith residence, although he did not in any manner personally participate in the transaction. It was undisputed that while Whitesel and Smith conducted their negotiations on the front porch, Stevenson remained out in the yard and conversed with Smith's grandson. Also Whitesel, and not Stevenson, made all of the monthly rent payments.

In the trial court there was a suggestion that Stevenson and Whitesel were joint tenants of the two

houses in which the stolen articles were recovered, and that Stevenson was therefore in joint "possession" of the stolen household goods. The evidence, however, does not justify such a conclusion, and in this Court the Attorney General states that "the houses apparently used as storage places were rented to one George Whitesel." This evidence does not establish that Stevenson was a lessee or a joint lessee of these premises, but only that he was a friend of the lessee, George Whitesel.

It is next urged that even though Stevenson was not a lessee of either of the two houses, nonetheless he was a resident or occupant thereof and being such he was therefore in "possession" of the stolen articles subsequently discovered therein. Again there is no evidence of any real substance to support such a conclusion. No witness testified that Stevenson lived there. In fact the People's evidence tends to show that no one lived in either of the two houses. Several witnesses did testify that on occasion they saw Stevenson in the company of Whitesel at and around the premises, one particular witness testifying that during a two month period he saw Stevenson around these houses on about six different occasions, though he understandably was unable to give the exact dates. Whether these occasions were all prior to September 18, 1960, the burglary having occurred some time after that date, is unknown.

The only other circumstantial evidence of an allegedly incriminating nature was the finding inside these houses by police officers on October 1, 1960, of certain personal papers obviously belonging to Stevenson. Specifically, the following were found in one or the other of these two houses: (1) a receipt from the First Garage, 841 North First Street, Grand Junction, with "Robert L. Stevenson" appearing thereon as the name of the customer; (2) a similar type receipt from Bill's Body Shop to "Robert L. Stevenson"; (3) a temporary automobile sticker issued to a 1952 De Soto, belonging to Robert L. Stevenson, on which his address was given as "Fruita";

(4) an envelope, addressed to "Robert L. Stevenson," 644 Ute Avenue, Grand Junction; and (5) another automobile sticker bearing the notation "Robert L. Stevenson," 34 Grove, San Rafael, California.

In connection with Stevenson's automobile, it was established by the People that the license on this vehicle was listed to "Robert L. Stevenson, in care of Reverend Brown, Fruita", Reverend Brown was a Methodist minister and testified that he had been Stevenson's counselor for three and one-half years.

█ In our opinion the fact that these documents were found inside one or the other of the two houses falls far short of establishing that Stevenson either occupied or resided in these premises, or either of them. It was not established how these several items got into the house. Did Whitesel, who frequently used Stevenson's car, bring them in? If Stevenson himself left them there, did he do so *before* or *after* the date of the Homedew burglary? These unanswered questions demonstrate to our satisfaction the shaky and unconvincing nature of this bit of evidence.

█ The People rely upon *Collins v. People,* 69 Colo. 343, 193 Pac 634, wherein a conviction for burglary was upheld with the following comment: "A part of the stolen goods were found in a house not occupied by the defendant, *but which had been occupied by him at and after the time of the burglary* . . . There was sufficient *other evidence* in the case from which the jury could infer that the defendant placed the goods where they were found." (Emphasis supplied.) In the instant case the evidence when viewed in a light most favorable to the People is most inconclusive and singularly unclear as to whether these houses were "occupied by him [Stevenson] at and after the time of the burglary," and there was no "other evidence" of any real substance from which the jury could logically infer that Stevenson had placed the stolen property where it was eventually found.

We conclude that the evidence fails to establish, prima facie, that Stevenson was either the lessee, or co-lessee, of these two houses or that he ever occupied or resided in either.

It is finally suggested that even though Stevenson was perhaps not technically in "possession" of the fruits of this burglary, that nevertheless when all of the circumstances are considered together and viewed as a whole there is sufficient evidence to support the burglary conviction. Suffice it to say that *Pena v. People,* 147 Colo. 253, 363 P. (2d) 672 and *Ciccarelli v. People,* 147 Colo. 413, 364 P. (2d) 368, cited in this regard by the People, each present a factual situation in which there is much more incriminating circumstantial evidence than is to be found in the instant case.

Viewed in its entirety the evidence relied upon by the People is insufficient both in quality and quantity to support the verdict of the jury. It is unconvincing, leaves too much to speculation and conjecture, and is equally consistent with a hypothesis of innocence as with that of guilt. True, one possessed of only normal curiosity might be suspicious and surmise that Stevenson had something to do with the Homedew burglary, but mere suspicions, however strong, have not yet been accepted in lieu of proof beyond a reasonable doubt. *Van Straaten v. People,* 26 Colo. 184, 56 Pac. 905; *Lombardi v. People,* 124 Colo. 284, 236 P. (2d) 113; *Goodell v. People,* 137 Colo. 507, 327 P. (2d) 279; and *Stull v. People,* 140 Colo. 278, 344 P. (2d) 455.

The judgment is reversed and the cause remanded with directions to vacate the judgment and sentence and dismiss the information.

MR. CHIEF JUSTICE HALL not participating.