No. 24567

**Stanley T. Dolan v. Alice T. Mitchell**
(502 P.2d 72)

Decided September 5, 1972. Opinion modified and as modified rehearing denied November 6, 1972.

Warberg and Mast, Sonja E. Warberg, D. Chet Mast, for plaintiff in error.

Hill and Hill, Alden T. Hill, for defendant in error.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We will refer to the parties as they appeared in the trial court, where the defendant in error, Alice C. Mitchell, was the plaintiff, and the plaintiff in error, Stanley T. Dolan, was the defendant.

The plaintiff brought this action to recover for the "wrongful death" of her husband, James Mitchell, who died as a result of an automobile accident which involved two vehicles. The accident occurred on U.S. Highway 287, approximately one mile east of Laporte, Colorado, on a rainy summer afternoon. The widow claimed that her deceased husband was proceeding east in the south lane of the highway at approximately thirty to thirty-five miles per hour when his automobile was struck by the defendant's automobile which had just entered the highway from a driveway. She contended that the defendant's automobile came from the south side of the road and struck the right side of the deceased's car. The defendant offered an entirely different version of the events which preceded the collision. He testified that he was driving west in the north lane of the highway at approximately fifty miles per hour when the automobile driven by the deceased suddenly swerved broadside into his

path. He contended that under the circumstances, he could not avoid colliding with the right side of the deceased's vehicle. The point of impact was critical and hotly disputed. Witnesses were called who supported both the plaintiff's and the defendant's versions of the events which immediately preceded the collision. The plaintiff's witnesses testified that the point of impact occurred in the south (eastbound) lane. The defendant's witnesses offered testimony which established the point of impact in the north (westbound) lane. The jury found in favor of the plaintiff, and the defendant brought this writ of error. Errors which were committed in the trial of the case compel us to reverse and to remand for a new trial.

## I.
### Soil Samples

The plaintiff's theory of the case was that the defendant had actually entered onto U.S. Highway 287 from the driveway of a Plantarium Greenhouse which was located on the south side of the highway just adjacent to the scene of the accident. The plaintiff attempted to show that the collision occurred on the deceased's side of the highway (south lane) as the defendant exited from the driveway. To support this theory, the plaintiff introduced several soil samples to show that the defendant's automobile had been in the Plantarium Greenhouse parking lot. It was undisputed that immediately after the accident, the defendant's automobile was towed through the parking lot in question. Thus, even if the soil samples taken from the defendant's automobile matched the soil samples taken from the parking lot, this fact would provide no support for the plaintiff's theory that the defendant's automobile had been in the parking lot *before* the accident. Facts supporting only conjectural inferences have no probative value and should not be admitted in evidence. *Cf., Stevenson v. People,* 148 Colo. 538, 367 P.2d 339 (1961). *See also, Sorrell v. Scheuer,* 209 Ala. 268, 96 So. 216 (1923); *Taylor v. State,* 31 Ala App. 590, 20 So.2d 239 (1944); *Barnes v. State,* 31 Ala.App. 187, 14 So.2d 242 (1943); *Martin v. State,* 16 Ala.App. 406, 78

So. 322 (1918). Under the circumstances, the admission of this evidence could only serve to confuse and mislead the jury, and it should not have been admitted.

## II.
### Photographic Evidence

 In an attempt to establish the point of impact and to support his theory of the case, the defendant offered a number of photographic exhibits, some of which were not admitted into evidence. Defendant's Exhibit 15 was a photograph of the scene of the accident taken some time after the vehicles had been removed. It was identified by a competent witness as being an accurate portrayal of the area where the vehicles had come to rest after the collision. The court declined to admit the exhibit into evidence on the grounds that no evidence had been presented to show who took the photograph, or the time when it was taken. The court also noted that the photograph showed the road as being dry, when, in fact, it had been wet at the time of the accident. Neither of these grounds justify the ruling of the court. What is proper foundation for the admission of photographs into evidence was set forth in these words in *Mow v. People,* 31 Colo. 351, 72 P. 1069 (1903):

"It is only necessary to show that a photograph, in order to warrant its admission in evidence, if otherwise competent, is a correct likeness of the objects which it purports to represent. This may be shown by the person who made it, or by any other competent witness . . . ."
*Accord, Kortz v. Guardian Life Ins. Co.,* 144 F.2d 676 (10th Cir. 1944).

The photograph was not offered to show the condition of the road surface, but only to show the scene of the accident. Since it was offered for this limited purpose, wetness or dryness of the surface was not significant. There was a proper foundation laid that the photograph accurately protrayed the scene and, hence, the photograph should have been admitted. *Jones v. Smith,* 372 S.W.2d 71 (Mo.App. 1963).

 The trial court also refused to admit Defendant's

Exhibits 16 through 19 into evidence. These exhibits were photographs of the deceased's vehicle which were taken a number of months after the accident occurred. The photographs were introduced to show aspects of metal deformation in the deceased's automobile. Based on these photographs, one of the defendant's experts was prepared to testify that the collision could not possibly have happened in accordance with the plaintiff's theory of the case. A competent witness testified that the photographs accurately portrayed the particular physical details which they were introduced to establish. Nevertheless, the court refused to admit the photographs into evidence on the grounds that they were duplicative and inaccurate, since they depicted the vehicle without an engine and wheels. Assuming that the court was correct in concluding that the photographs were duplicative, this fact in itself would not support the court's decision. As this Court stated in *Potts v. People,* 114 Colo. 253, 158 P.2d 739 (1945); "The fact that the photographic evidence may be cumulative is not alone ground for its rejection . . . ."

It was also error for the court to refuse to admit the photographs into evidence on the ground that the photographs were not accurate in all respects. The photographs were introduced specifically to demonstrate the absence of metal smearing and the penetration caused by the defendant's vehicle. The accuracy of the photographs in both respects was undisputed, and consequently, they should have been admitted into evidence. *Green v. City and County of Denver,* 111 Colo. 390, 142 P.2d 277 (1943); *Reed v. Davidson Dairy Co.,* 97 Colo. 462, 50 P.2d 532 (1935); 2 *Scott, Photographic Evidence* § 1101 (2d ed. 1969). *See also Pasero v. Tacoma Transit Co.,* 35 Wash.2d 97, 211 P.2d 160 (1949), wherein the testimony of an expert based on metal smearing was specifically approved.

### III.
### Accidentologist

During the trial, defense counsel called two witnesses to testify as experts on behalf of the defendant. One of the witnesses, Officer Franco, had conducted the investigation of

the scene of the accident minutes after the accident occurred. The trial court recognized Officer Franco's qualifications as an expert but, nevertheless, refused to let him testify as to the point of impact. The court's ruling was predicated on the absence of skid marks and the fact that prior to Officer Franco's arrival at the scene, the two automobiles had been moved slightly in an attempt to free the deceased from his vehicle.

In accordance with our holding in *McNelley v. Smith*, 149 Colo. 177, 368 P.2d 555 (1962), the officer should have been allowed to testify as to the point of impact on the basis of the existing physical facts at the scene of the accident. The officer found a gouge mark in the roadway, which he used as part of the foundation for his opinion. Under ideal circumstances, additional evidence, such as skid marks, might be available to lend further support to the officer's opinion. However, the lack of such evidence is not a proper ground for excluding the officer's testimony. The absence of skid marks or other physical facts is a proper subject for cross-examination. The trial judge should decide whether a witness is a qualified expert on a subject appropriate for expert testimony, but the basis of his opinion and the weight to be given the opinion should be left for advocates to challenge and for the jury to determine. Similarly, the movement of the automobiles which occurred prior to the officer's arrival at the scene was not a proper basis for denying admissibility of the officer's opinion. The extent of the movement of the vehicles was fully testified to by a competent witness before defense counsel attempted to elicit Officer Franco's opinion as to the point of impact. Such testimony, together with the officer's observations at the scene, provided factual foundation for the officer's proffered opinion and for formulating a hypothetical question relating to the point of impact.

The other defense witness, Professor Richard Crawford, was also recognized by the court as a qualified expert in the field of accident reconstruction. Professor Crawford was prepared to offer expert testimony concerning the collision

based on the testimony of witnesses to the accident, physical facts admitted into evidence, and numerous photographs of the accident scene and the vehicles after impact. All of the photographs had been previously identified by competent witnesses as accurate portrayals of those facts which Professor Crawford elected to rely upon to give an opinion on how the accident occurred. The trial court held that the opinion of Professor Crawford was inadmissible because his opinion would resolve the ultimate question of fact which was to be decided by the jury. The court also noted that the inference from the circumstances in this case was within the competency of the jurors and that Professor Crawford's testimony was founded on the examination of only one of the automobiles and was conducted over one year after the accident.

This Court has said that evidence of the opinion of experts is admissible only when the subject matter of the controversy renders it necessary or proper to resort to opinion evidence. *Blackburn v. Tombling,* 148 Colo. 161, 365 P.2d 243 (1961); *accord, McNelley v. Smith, supra.* Here, Professor Crawford was prepared to testify regarding the absence of metal smearing and the extreme penetration of the defendant's vehicle into the right side of the plaintiff's vehicle which occurred at the time of impact. The testimony sought to be introduced was not a reconstruction of the accident, but an expert's opinion based upon physical facts that the collision could not have occurred in accordance with the plaintiff's contention. This testimony was relevant to the defendant's case and was based on photographs that were properly admissible into evidence.

The court refused the testimony and was obviously concerned about the fact that Professor Crawford failed to personally examine the scene of the accident and the two vehicles involved within a short time after the accident occurred. A similar concern was voiced in *Miller v. Pillsbury Co.,* 33 Ill.2d 514, 211·N.E.2d 733 (1965). There, the court, in affirming the competency of the expert to testify, said:

"[I]t would have been ideal if the picture taking and the

expert's examination could have been at the scene immediately following the accident. However, the question is whether the truck when photographed was in substantially the same condition as it was following the collision. The evidence that the removal from the scene of the accident did not inflict damage and that the photograph accurately portrayed the damage prior to such removal was sufficient to make the pictures admissible. Hence, the photographs were proper subjects to be used by the expert in his reconstruction testimony."

*Accord, Woyak v. Konieske,* 237 Minn. 213, 54 N.W.2d 649, 33 A.L.R.2d 1241 (1952); *C.F. Tiemeyer v. McIntosh,* Iowa, 176 N.W.2d 819 (1970); *see Bridges v. Lintz,* 140 Colo. 582, 346 P.2d 571 (1959). *See generally,* 3 *Wigmore, Evidence* §§ 790-798(a); *McCormick, Evidence* § 181; *Belli, Modern Trials* § 225; *Lacy, Scientific Automobile Accident Reconstruction,* p. 8.

## IV.
### Instructions

At the conclusion of the evidence, the court instructed the jury on all aspects of the case. Included among the instructions given by the court was an instruction tendered by the plaintiff which related to the negligence issue. The instruction dealt with the requirement that headlights be lit in times of poor visibility where objects are not discernible at 500 feet. C.R.S. 1963, 13-5-86. Although the evidence showed that it was raining at the time of the accident, there was no testimony presented to show that visibility was so poor that objects were not discernible at 500 feet. Indeed, the uncontradicted testimony of one of the plaintiff's witnesses was that vehicles one-half mile away were visible at the time of the accident. In addition, there was no evidence that poor visibility was the proximate cause of the accident. Under these circumstances, the court erred in giving the instruction. We said in *Houser v. Eckhardt,* 168 Colo. 226, 450 P.2d 664 (1969):

"An instruction should not be given which creates an issue of fact not supported by the evidence or which tends to mislead

or divert the minds of the jury from the real factual issues
. . . ."

*See also Baldwin v. Schipper,* 155 Colo. 197, 393 P.2d 363
(1964).

The defendant also protests the trial court's refusal
to give an instruction regarding the rebuttable presumption
of negligence that arises against a driver who is on the wrong
side of the road at the time of a collision. Such an instruction
has been approved by this Court [C.J.I. 11:9], and its use has
been sanctioned in cases where there is evidence to support
it. *See Drake v. Hodges,* 114 Colo. 10, 161 P.2d 338 (1945),
and the cases cited therein. Here, there was evidence from
which the jury could have concluded that one of the vehicles
was on the wrong side of the road at the time of the collision.
Consequently, the instruction was properly tendered by the
defendant, and it should have been given.

V.

Discovery

While preparing for trial in September, 1969, the
defendant directed written interrogatories to the plaintiff,
requesting the names of the witnesses to be called by the
plaintiff at the time of trial. In responding to the interrogato-
ries, the plaintiff failed to provide the names of any
witnesses, although the first witness to be called by the
plaintiff at trial had been subpoenaed to testify since March,
1969. The information sought by the defendant was subject
to discovery pursuant to R.C.P. Colo. 33 and 26(b). The
refusal of the plaintiff to supply the information requested
was in itself a ground for reversal. *Denver & Rio Grande
Western R.R. v. District Court,* 141 Colo. 208, 347 P.2d 495
(1959); *Lucas v. District Court,* 140 Colo. 510, 345 P.2d
1064 (1959).

Furthermore, under R.C.P. Colo. 33, the plaintiff
had a continuing duty to inform the defendant of newly
discovered witnesses. *Laws v. City of Wellston,* 435 S.W.2d
370 (Mo. 1968); *Gebhard v. Niedzwiecki,* 265 Minn. 471,
122 N.W.2d 110 (1963); *McNally v. Yellow Cab Co.,* 16
F.R.D. 460 (E.D. Pa. 1954); *White Tower Management Corp.*

*v. Erie Main Corp.,* 28 N.J. Super. 425, 100 A.2d 775 (1953); Erickson, *Plaintiff's Advantageous Use of Discovery, Pre-Trial and Summary Judgment,* 40 Denver Law Center Journal 192 (1963); *Developments in the Law — Discovery,* 74 Harv. L. R. 940 (1960-61). Today, under the amended Colorado Rules of Civil Procedure, the continuing duty of a party to supplement his responses and to identify and provide the location of persons who have knowledge of discoverable matters is expressly required by C.R.C.P. 26(e)(1).

We, therefore, direct that on retrial such interrogatories should be fully and completely answered.

## VI.

### Consolidation for Trial

Subsequent to the filing of this action by the wife of the deceased, the defendant brought suit against the estate of the deceased. Since both actions involved common questions of law and fact, the defendant moved that the actions be consolidated for trial. The court conducted a hearing on the motion and after considering the arguments of both parties ordered that the actions be consolidated.

Thereafter, counsel for the estate of the deceased moved for a continuance, and the court ordered that the actions be severed and tried separately. On remand, the trial court may wish to reconsider the motion to consolidate in accordance with the rule, and the consolidation issue is, therefore, left within the sound discretion of the trial court. C.R.C.P. 42.

We have determined that the defendant's remaining contentions are without merit. Accordingly, we direct that the judgment be reversed and that the case be remanded for a new trial and for further proceedings not inconsistent with this opinion.