655 P.2d 1111 (1982)
In the Matter of the ESTATE OF Ruth M. HOCK, Deceased.
ZION'S FIRST NATIONAL BANK, Personal Representative, Appellant,
v.
Jack M. FENNEMORE, Petitioner and Respondent.
No. 17638.
Supreme Court of Utah.
September 14, 1982.
*1113 Suzanne M. Dallimore, Russell C. Harris, Salt Lake City, for appellant.
Dwight L. King, Salt Lake City, for petitioner and respondent.
DURHAM, Justice:
Jack M. Fennemore, respondent, petitioned the Third District Court to determine his interest in a house devised to certain charitable organizations by his deceased sister, Ruth M. Hock. The district court found that Ruth Hock had held the house in constructive trust for her brother and awarded him an undivided one-half interest in the property. The personal representative of the estate and the devisees appeal. We affirm for the reasons set forth below.
Martha Fennemore, the widowed mother of Jack M. Fennemore (Jack) and Ruth M. Hock (Ruth) and sole owner of the family home at 539 South 4th East in Salt Lake City, deeded the house in joint tenancy to Jack and herself in 1967. In June of 1975, Martha and Jack executed a deed which vested title in Jack and Ruth as joint tenants with rights of survivorship. Martha, Jack and Ruth all lived in the house at that time. In July of 1975, Ruth and Jack traded the family home for a house located at 434 Wall Street, taking title as joint tenants. The Wall Street property was purchased for a stated price of $34,000, which was represented by transfer of clear title on the family home on 4th East to the owners of the Wall Street property and the assumption by Ruth and Jack of a $16,000 mortgage on the Wall Street property.
Shortly after the family took up residence at the Wall Street house, Martha was moved to a resthome and shortly after that Jack suffered a minor stroke and was diagnosed as having Parkinson's disease. As Jack's health deteriorated, Ruth assumed a major role in taking care of the house and in the conduct of Jack's financial affairs. In 1976, Jack executed a power of attorney in favor of his sister; there was no evidence that the power of attorney was ever recorded or that Ruth ever attempted to exercise it.
In 1977, Ruth and Jack sold the Wall Street property for $37,000 in cash, the $16,000 mortgage having been retired by Ruth, and for a price of $31,500 Ruth took title in her own name to a house located on 9th East in Salt Lake City. Jack and Ruth lived together in the house on 9th East. In July of 1979, the house on 9th East was sold for $49,500 and Ruth took title in her own name to a house located on 6th South for a purchase price of $40,000. The house located on 6th South is the subject of this dispute between Jack and the personal representative of Ruth's estate.
During the years following the onset of Jack's illness, Jack changed his separate checking and savings accounts and certificates of deposit to joint accounts with Ruth. He customarily deposited all of his income from investments and social security into an account upon which Ruth drew for the payment of expenses of their common home. *1114 When Ruth purchased insurance on the house on 6th South she named Jack as an insured titleholder, even though she alone was the record titleholder.
In April of 1980, Ruth died. By a will dated July 11, 1968, and a handwritten codicil dated May 30, 1974, she directed her "house to be sold and proceeds to go to American Bible Society and Unity School of Christianity." On the date the codicil was prepared, Ruth owned a house on 7th East, which she sold prior to moving into the family home on 4th East with Martha and Jack in 1975.
The personal representative of Ruth's estate has proposed to sell the house on 6th South and distribute the proceeds to the named devisees. In response, Jack, along with his brother, Robert Fennemore, and his sister, Peggy Fennemore, filed this action to determine Jack's interest in that house. The trial court held that the proceeds from the sale of the Wall Street property, the last piece of property held jointly by Ruth and Jack, were held in constructive trust by Ruth for her brother and that the trust continued in each of the houses thereafter purchased by Ruth. The court awarded Jack a one-half undivided interest in the house on 6th South. The personal representative appeals claiming that the evidence does not support finding a purchase money resulting trust or a constructive trust and that the trial court committed fundamental evidentiary errors in admitting and disallowing certain evidence.
In briefs and arguments presented to the trial court, the parties outlined for the court the essential elements of both a purchase money resulting trust and a constructive trust. In its comments at the conclusion of the trial and in the written conclusions of law and fact, the trial court characterized the legal principle upon which he based his decision as a constructive trust. We affirm the substantive judgment of the trial court. We further find, however, that the judgment was erroneously based upon a finding of a constructive trust. Jack's interest in the house that he occupied at the time of his sister's death is properly founded on a purchase money resulting trust. It is our duty in an equity case to review the law as well as the facts. Jensen v. Brown, Utah, 639 P.2d 150 (1981). We will affirm a trial court's decision on a proper ground even if not relied upon by the trial court. Peterson v. Peterson, Utah, 645 P.2d 37 (1982). A constructive trust is an equitable remedy to prevent unjust enrichment, Haws v. Jensen, 116 Utah 212, 209 P.2d 229 (1949), and a purchase money resulting trust is an equitable remedy designed to implement what the law assumes to be the intentions of the putative trustor. 5 Scott, Law of Trusts § 440.1 (3d ed. 1967).
In this case, as in most cases involving constructive or resulting trusts, we are called upon to alter a deed or other writing which is regular in form and is presumed to convey a clear and unambiguous title. When such a deed or document is attacked, the party alleging the variance must prove the claim by clear and convincing evidence. Jacobson v. Jacobson, Utah, 557 P.2d 156 (1976); Pagano v. Walker, Utah, 539 P.2d 452 (1975). Parol evidence may be introduced to prove a constructive or resulting trust since these trusts arise by operation of law and are expressly excluded from the statute of frauds. Section 25-5-2, U.C.A., 1953; Carnesecca v. Carnesecca, Utah, 572 P.2d 708 (1977). In our review of an equity case such as this, we will not disturb the trial court's findings of facts unless the evidence clearly preponderates against it. Jensen, supra, and cases cited therein. We apply this standard of review in cases involving trusts which arise by operation of law and in which the standard of proof is one of clear and convincing evidence.[1]Pagano, supra; Jewell v. Horner, 12 Utah 2d 328, 366 P.2d 594 (1961).
*1115 The general rule for the creation of a purchase money resulting trust by operation of law has been set out in Restatement (Second) of Trusts § 440 (1959):
Where a transfer of properties is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442 and 444.
A similar formulation of this doctrine has been adopted in Utah, Hawkins v. Perry, 123 Utah 16, 253 P.2d 372 (1953), and we have previously cited with approval § 440 of the Restatement (Second) of Trusts. Little v. Alder, 19 Utah 2d 163, 428 P.2d 156 (1967). The fact which must be proven in the case of a purchase money resulting trust is that one party paid the purchase price for property and another party was given legal title. The recitals in the deed do not preclude evidence of the actual transaction. Jackson v. Hernandez, Texas, 155 Tex. 249, 285 S.W.2d 184 (1956). Professor Scott in his treatise on trusts explains the interworking of these factors:
If there's no evidence as to the intention of the parties, other than the fact that A paid the purchase price for conveyance to B, a resulting trust arises in favor of A. It is unnecessary for A to introduce further evidence that the trust was intended, since the character of the transaction itself raises the inference that B was not to take the property beneficially.
5 Scott, Law of Trusts § 440 (3d ed. 1967).
The trial court has made two parallel sets of actual findings which are the key to determining the appropriate rule of law to apply and the appropriate outcome based upon that principle of law. The court found that when the Wall Street property was sold, the proceeds from that sale were used to purchase the house on 9th East. The court further found that Ruth held legal title as a matter of convenience and with no intention of denying or defrauding Jack of his interest in the property. The court also found that the proceeds of the sale of the property on 9th East were used to purchase the property on 6th South and that Ruth held the legal title as a matter of convenience with no intention to deny Jack his interest in the property. None of the parties disputes the findings that in the management of Jack's affairs Ruth did not engage in any fraud, bad faith or breach of a fiduciary responsibility. In light of this undisputed finding, the doctrine of constructive trust is inapplicable. The key finding of fact, which is vigorously disputed by the personal representative of the estate, is that the proceeds of the sale of the property on Wall Street were used to purchase the house on 9th East and the house on 6th South.
In arriving at this finding of fact, the trial court had before it the evidence concerning these transactions which is set forth above. In addition, the court heard evidence that the amounts in Jack's investments and savings accounts remained essentially unchanged during the period of these transactions and that Ruth had sufficient resources of her own to have paid off the $16,000 mortgage on the Wall Street property without using Jack's funds. The evidence concerning the unchanged amounts in Jack's accounts is particularly significant, since he was the owner of half of the proceeds from the sale of the Wall Street house. The fact that none of that large amount of cash appeared in his separate accounts supports the logical inference and finding made by the trial court that those monies went into the subsequent houses held in Ruth's name. The stable amounts in his accounts also give rise to the inference that Jack's income during the period he lived with Ruth was pooled with hers for their joint use, and not deposited by him in his accounts for his sole benefit. The personal representative of the estate contends that there is no clear evidence that any of Jack's money was used to buy the property on 9th East or that Jack made any contribution *1116 towards paying off the $16,000 mortgage. In reviewing this evidence, we note that Ruth's will and codicil were prepared prior to her joint ownership with Jack of the family home and the house on Wall Street. When the Wall Street house was sold and Ruth took title to the house on 9th East, a net gain of $6,000 occurred. When the house on 9th East was sold and the house on 6th South purchased, a gain of $8,500 was realized. The evidence shows that none of this money was placed in Jack's accounts; it is logical to infer that it may represent a recovery by Ruth of monies she spent paying off the mortgage on the Wall Street house.
The trial court reached its decision after viewing the evidence in its entirety, including the personal and financial relationship between Ruth and her partially disabled brother, the evidence of the intermingling of their financial assets, and evidence on the history of the sale and purchase of these houses. We conclude that the evidence does not clearly preponderate against the trial court's conclusions. Jensen, supra. We affirm the trial court's finding that Jack's interest in the Wall Street property was used as partial payment for the subsequent purchases of the property to which Ruth alone held legal title.
Sections 442 and 443 of Restatement (Second) of Trusts provide that if the transfer of property is made to one person, the purchase price is paid by another, and the transferee is a "wife, child or other natural object of bounty of the person by whom the purchase price is paid," a purchase money resulting trust will not arise unless the one paying the purchase price manifests an intention that the transferee should not have the beneficial interest in the property.[2] Comment a. of § 442 notes that this exception to the resulting trust rule does not apply in the case of brothers and sisters, aunts or uncles or nieces or nephews where the payer does not stand in loco parentis to the legal titleholder. We hold that where the funds of a sibling are used to purchase property and the legal title is held by another sibling, the presumption of a resulting trust in favor of the payer will arise as if no family relationship existed between the parties. In light of the trial court's finding of fact, affirmed herein, that Jack Fennemore's interest in the Wall Street house was used to purchase the two pieces of property taken in Ruth Hock's name, we further hold that Jack Fennemore had an undivided one-half interest in the 6th South Street property.
The personal representative of the estate claims four points of error concerning the admission of evidence at trial. It claims that § 78-24-2, U.C.A., 1953, the "deadman's statute," precluded the testimony of Robert Fennemore, Jack's brother and a plaintiff in the lawsuit, even though Ruth bequeathed nothing to Robert and he had no interest adverse to Ruth or the estate. The trial court noted and applied the rule set out in Carnesecca, supra, that the deadman's statute, as a limitation on the introduction of testimony bearing upon ultimate truth, should be narrowly construed and applied strictly according to its terms. It should be applied only to disqualify those who have a direct interest adverse to the interest of the deceased and her estate. Carnesecca, supra. We affirm the trial court's ruling. The trial court appropriately looked beyond the pleadings to determine if in light of the factual context before it the witness had an interest adverse to the deceased or her estate. The court properly exercised its discretion to admit Robert's testimony. The trial court further reserved the option of disallowing further testimony *1117 if the examination of this witness revealed a truly adverse interest which triggered the application of the deadman's statute.
Appellants claim that admission of evidence that Jack executed the power of attorney in favor of Ruth was prejudicial error because the power was not recorded as required by § 57-1-8, U.C.A., 1953. Appellant's objection misses the mark. Section 57-1-8 is a precondition for the effective exercise of the power of attorney. It is not relevant to questions concerning whether the execution of an unrecorded power of attorney is probative of any material issues in a trial where the actual exercise of that power of attorney is not at issue.
Appellant also claims it was prejudicial error to admit hearsay statements by Robert Fennemore. Robert testified to a breakfast conversation between Ruth and himself in which Ruth mentioned buying furniture and other household items for which Jack had supplied some of the money. The respondent claims that these items of evidence were not offered to prove that Jack had in fact contributed to the furniture, but to show a pattern of common enterprise between Jack and Ruth. The case cited by the respondents, Hawkins, supra, does not support their position. The "verbal acts" offered in evidence in Hawkins were part of a transaction and the combined effect of the actions and the words spoken had legal consequences which are not dependent on the truth of the verbal communications. The utterance is an operative fact to which the law attaches duties and liabilities. J. Weinstein, M. Berger, 4 Weinstein's Evidence § 801(c) (1981); McCormick, Evidence § 249 (2d ed. 1972); 6 Wigmore, Evidence §§ 1772-1786 (Chadbourn Rev. 1976). The fact that Ruth made the statements reported by her brother has no legal consequence in itself. These statements are offered for the truth of the fact that Jack contributed to the purchase of furniture and other household items, from which the inference is to be drawn of a common enterprise in this, as well as other, aspects of their financial affairs. It is from this factual pattern of joint activities that the trial court drew certain legal conclusions. Robert Fennemore's testimony as to these comments by his sister is hearsay and not admissible under Utah Rule of Evidence 63.
The question of whether Ruth and Jack were engaged in a common enterprise in their day-to-day activities is directly relevant to the question of whether there was an ongoing fiduciary relationship as would be required under a resolution of this case based on a constructive trust. We have held that the applicable principles of law in this case relate to a purchase money resulting trust. Therefore, we hold that in the resolution of this question the improper admission of this evidence was harmless error. The exclusion of this evidence would not present the likelihood of a different result. Utah R.Evid. 4; Eager v. Willis, 17 Utah 2d 314, 410 P.2d 1003 (1966).
Appellant also claims the court erred in refusing to allow evidence concerning the independent financial resources of Ruth Hock. Appellant's purpose in offering this evidence was to prove that Ruth Hock had the resources to pay off the $16,000 mortgage on the Wall Street property and to purchase the subsequent property without the use of Jack's funds or his interest in the property previously held in his name. Counsel for the respondent stipulated that Ruth had those financial resources and the judge in his summation of the evidence at conclusion of the trial stated that he assumed that Ruth had enough money to make these purchases on her own. In light of the respondent's stipulation, the trial court was properly within its discretion in refusing to admit cumulative evidence.
Affirmed. Costs to respondent.
STEWART and OAKS, JJ., concur.
HALL, Chief Justice (dissenting):
I do not join the opinion of the Court because I view the totality of the evidence as less than clear and convincing that a trust should be imposed on the subject property.
*1118 The majority opinion recounts as clear and convincing evidence the "personal and financial relationship between Ruth and her partially disabled brother," the "intermingling of their financial assets," and the "history of the sale and purchase of these houses." However, the most that can be said of the general, unspecific nature of that evidence is that it might give rise to some inference that they made a joint investment in the subject property. Simply an inference is not sufficient. The evidence must be clear and convincing. What the evidence relied upon lacks in clear and convincing quality lies in the absence of any evidence whatsoever that any of Jack's funds were expended to make the purchase, or were otherwise invested in the property.
The record clearly reflects that Jack had a joint tenancy interest with Ruth in the family home on Fourth East Street, which he traded for a similar interest with Ruth in the Wall Street property. Upon sale of the Wall Street property, the record is silent as to any clear disposition of any monetary sum representing Jack's interest therein. Ruth then acquired the Ninth East Street property in her own name. She subsequently sold it and acquired the subject property on Sixth South Street in her own name.
Wholly absent from the record is any documentary evidence that Jack contributed and of his own funds to the Ninth East or the Sixth South property. Oral testimony under such facts and circumstances as exist in this case fails to meet the "clear and convincing" standard of proof that is required to vary the terms of a written instrument.
I deem it to have been incumbent upon Jack to have traced the expenditure of his own funds into the subject property. This he failed to do. From the standpoint of the record before us, the last clear evidence of any interest Jack had in properties owned by Ruth was at the time of the purchase of the Wall Street property. This was two transactions prior to the purchase of the property in question. Any number of explanations could be made as to what disposition was made of Jack's proceeds, if any he had, from the sale of the Wall Street property, but the Court is not free to conjecture.
I would vacate and set aside the judgment of the trial judge and remand for the purpose of requiring the executor to distribute the property of the estate of the deceased in accordance with the terms of the will and codicil.
HOWE, J., concurs in the dissenting opinion of HALL, C.J.
HOWE, Justice (dissenting):
I concur in the dissenting opinion of Chief Justice Hall. In addition, I make the following observations concerning the evidence:
I agree with the statement in the majority opinion that a resulting trust arises when it is proven that one party paid the purchase price for property but another party was given legal title. Although the trial court found that that happened in this case, the record reveals no competent evidence to support that finding. The plaintiff was unable to adduce any evidence of who was paid the $37,000 cash which was received for the sale of the Wall Street property, or where those funds went. The plaintiff was disqualified from testifying as to those matters under § 78-24-2(3), U.C.A. 1953, our Deadman's statute. The real estate broker who handled the sale of the Wall Street property was called as a witness but all that he was able to testify to was that the property was sold for $37,000 cash. Neither could he remember nor did he have documentary evidence as to where the money went or to whom it was paid. It could not be traced into the property at 1513 South 9th East nor into the property later purchased at 523 East 6th South. The evidence did establish that when Jack and Ruth purchased the Wall Street property they assumed a $16,000 mortgage which Ruth retired with her own funds.
All of the testimony adduced by the plaintiff to establish a resulting trust was either so vague or indefinite that only by *1119 supposition could it be concluded that the proceeds from the sale of the Wall Street property went into the 9th East home and then later into the 6th South property. For example, the home owners' insurance policy on the 6th South property showed Jack as well as Ruth as an insured, but because the policy also insured the personal property of each of them, this designation is not probative of any ownership by Jack in the real estate. Secondly, when the 9th East property was purchased the real estate broker had a conversation with Ruth, but his recollection of what she said was so vague and inconclusive that it does not rise to the level of proving a resulting trust. The broker was asked whether he discussed "the way the title to the property she was buying at 9th East was to be taken." He answered:
A. I did. I can't repeat verbatim what I said back in these [sic] years ago but as I recall the gist of the conversation was "Jack and your brother are together in this thing." And she said, "Yes, don't you worry about it. I will handle it," and she said, "I want the thing in my own name." I said, "Fine. How are we going to arrange that?" She said, "We will just do it in my name." I said, "If that is all right with Jack, that is all right with me."
Another fact relied upon by the plaintiff was that in recent years Jack had turned over to Ruth all interest, dividend and social security checks which he received. She deposited them in her account and used them for paying utilities and other living expenses. There was no evidence that any of this income of Jack went into any capital expenditure such as one of the houses.
If this case is to be decided by indulging in inferences, one can just as easily infer that Ruth put the title of the 9th East home in her name only because she paid for it with her own funds. Because she had retired the $16,000 mortgage on the Wall Street property with her own funds, she presumably would have been entitled to the greater share of the $37,000 received from its sale. The evidence was undisputed that Ruth had other money of her own which she could have added to her share of the proceeds of the Wall Street property and purchased the 9th East property.
The burden was upon Jack to establish the existence of a resulting trust by clear and convincing evidence. I conclude that he has fallen short of that mark.
NOTES
[1] In an equity proceeding, we do not engage in a review of the evidence which duplicates the task of the trial court. Rather, we assess the quality and quantity of the evidence to determine whether it "clearly preponderates against" the trial court's finding that the appropriate standard of proof has been satisfied. A determination by this Court that the evidence "clearly preponderates against" a trial court's finding requires a smaller quantum of contrary evidence, and a less stringent appraisal of its quality, when the trial court's finding is based upon a "clear and convincing" standard, rather than a "preponderance of the evidence: standard.
[2] We have said that the presumption of a resulting trust arises in favor of a wife where her separate funds are used to purchase property and title is taken in the name of the husband. No such presumption arises if the husband's funds are used to purchase property to which the wife holds legal title. Little, supra. We need not consider the continuing viability of this inconsistent rule and the archaic assumptions behind it in order to address the issue raised in this case. Note that Utah law now provides that both the husband and wife are responsible for family expenses, § 30-2-9, U.C.A., 1953, and either spouse may be required to pay alimony. Section 30-3-5, U.C.A., 1953, (1981 Supp.).