Wayne PEARCE, Plaintiff and Appellant,

v.

Martin J. WISTISEN, Richard Oveson, Defendants and Respondents.

No. 18376.

Supreme Court of Utah.

April 26, 1985.

---

Jackkson Howard, D. David Lambert, Salt Lake City, for plaintiff and appellant.

Darwin C. Hansen, Bountiful, for defendants and respondents.

HOWE, Justice:

Plaintiff appeals from a judgment entered on a verdict of "no cause of action" in a wrongful death action which he brought against the defendants on behalf of the heirs of his son, Evan Pearce, deceased, pursuant to U.C.A., 1953, § 78–11–7.

On the morning of June 1, 1979, Evan Pearce, age 18, and Kevin Wistisen, age 17, returned to their homes in Provo from a high school graduation party in a nearby canyon. On their way home they made plans to go water skiing on Utah Lake later that afternoon. Kevin's father, one of the defendants herein, was a 50 percent owner of a 16½-foot motorboat, with the other 50 percent being owned by defendant, Richard Oveson. Kevin received permission from his father to use it. Prior to leaving his house with it, Kevin "cleaned up" the boat by removing some equipment such as paddles and numerous life preservers, leaving two vest life jackets and one collar-type life jacket in the boat. He then picked up Evan, Evan's sister Leslie, and Angela Adams. The four of them launched the boat at a harbor on the east side of the lake at approximately 5:00 p.m. They decided to water ski on the west side of the lake because the water was calmer. Both Evan and Leslie water skied, with Evan slalom skiing. Kevin and Angela remained in the boat; Kevin, because of a leg injury, Angela, because she did not "want to make a fool of myself."

By 6:30 p.m., a brisk breeze was causing waves between one and two feet high, and the youths decided to return to the harbor. Evan made a bet with the girls that he could ski all the way back and prepared to

ski on two skis. As they started back, he fell into the water and let loose of the tow rope, which then became adrift. Without hauling in the rope, Kevin turned the boat around and, as it crossed the rope, it became entangled in the propeller, stalling the engine. Kevin attempted from the inside of the boat to disentangle the rope, but to no avail. The girls searched for a knife to cut the rope, but there was none. Kevin then donned a life jacket, shut off the battery to the boat under the engine cowl, and entered the water, asking the girls to keep an eye on Evan. Evan meanwhile was swimming toward the boat. When he was approximately 25 feet away, he shed his life jacket and made a dash for the boat in an attempt to cut it off at an angle, but the boat shot past him. Kevin grasped the rope to steady the boat and extended his hand toward Evan. The rope broke. Kevin, with his life jacket on and within 10 feet of the boat, tried to swim back to the boat but could not reach it. The girls threw Evan the only other remaining life jacket, an adjustable vest smaller than Evan's size. Evan slipped into it but could not or did not zip it up. Meanwhile, Kevin had drifted back to Evan, and the two boys called to the girls to start the boat. Because Kevin had not instructed them where to turn on the battery, they were unable to start the engine. They looked for a paddle or something with which to turn the boat, but were unable to find anything. They remained adrift until the Utah Parks and Recreation Department picked up the boat the next morning at 5:00 a.m. Meanwhile, Kevin and Evan had struck out for the west shore of the lake, with Evan leading the way. They stayed in visual and aural contact until dark. Kevin reached shore five hours later, but Evan drowned. Both of Evan's life jackets were found the next morning. His body was not found until eight days after the accident.

Evan's father brought this action for his son's wrongful death against the joint owners of the boat. A jury found that both owners and both boys had been negligent, but that Evan's negligence, and not Kevin's nor the owners' negligence, was a proximate cause of the accident.

Plaintiff's appeal claiming four errors: (1) prejudicial admission of evidence concerning Evan's alcohol purchase and consumption; (2) the trial court's failure to instruct the jury on the statutory requirement to carry an anchor aboard the boat; (3) the trial court's failure to give plaintiff's requested instruction on the presumption that Evan was exercising due care for his own safety; and (4) the trial court's failure to give plaintiff's requested instruction on imputed liability under U.C.A., 1953, § 73–18–18. In light of our holding, we address the evidentiary issue first.

■ Under Rule 45 of the Utah Rules of Evidence applicable at the time of trial of this case,[1] the trial judge "may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury...." This Court has followed the general rule that the trial court's decision to admit or exclude evidence will not be reversed unless it has abused its discretionary powers. *Terry v. Zion's Co-op Mercantile Institution*, Utah, 605 P.2d 314 (1979); *Martin v. Safeway Stores, Inc.*, Utah, 565 P.2d 1139 (1977). Nor is the fact alone that evidence was erroneously admitted sufficient to set aside a verdict unless it has "had a substantial influence in bringing about the verdict." *In re Estate of Hock*, Utah, 655 P.2d 1111 (1982); *Bambrough v. Bethers*, Utah, 552 P.2d 1286, 1290 (1976) (construing Utah R.Evid. 4(b) (repealed)). Conversely, where evidence was shown to have supported only conjectural inferences which had little probative

---

1. Since superseded by Rule 403 of the Utah Rules of Evidence, effective September 1, 1983, which now provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of un-

fair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

value, or where no evidence was adduced that showed that a fact had any causal connection with the plaintiff's injury, reviewing courts have reversed cases on grounds that the improperly admitted evidence could only have served to confuse and mislead the jury or to prejudice the outcome of the case. *State ex rel. Hausner v. Blackman,* 7 Kan.App.2d 693, 648 P.2d 249 (1982); *Plourd v. Southern Pacific Transportation Co.,* 266 Or. 666, 513 P.2d 1140 (1973); *Dolan v. Mitchell,* 179 Colo. 359, 502 P.2d 72 (1972).

In a motion in limine heard before the trial, counsel for plaintiff requested the court to refuse to admit any evidence that there had been drinking at the party in the canyon the night before the accident. The motion was made on the grounds that such evidence would be irrelevant in establishing proximate cause, that it would have no probative value that would not be outweighed by its prejudicial effect, and that it simply had no bearing on the case. Counsel for defendants proffered evidence that his witness, Rod Hunt, would testify that he and Evan had sponsored the party and bought "booze" with money collected from ticket sales and that some 200 young people had attended the party. When the party broke up around 3:00 a.m., Kevin, Evan, Rod, and some others stayed behind, cleaned up from the party, and got very little sleep before leaving the canyon at 6:00 a.m. Counsel for defendants argued that "even though we don't have any scientific evidence that might suggest the amount of alcohol in the system, there is enough experience that jurors would have that they could draw their own conclusions." Counsel further asserted that part of the defense would be that "this boy drowned because he had been up for 36 hours, he was physically exhausted, his conduct the night before aggravated his physical exhaustion, there had been no sleep, he had had alcohol...." Plaintiff's motion in limine was denied.

In his opening statement at trial, defendants' counsel asserted that he would prove that Rod Hunt and Evan had purchased quantities of alcohol for the party and had engaged in "substantial drinking." Plaintiff's counsel moved for a mistrial, but that motion was denied. Rod Hunt was the first witness for the defense. He was able, before objection could be made, to state that basically his relationship with Evan "consisted of partying, such as drinking." That remark was stricken after the jury heard it. He was allowed, over strenuous objection, to tell the jury that he and Evan had made an illegal purchase of liquor. The trial court let that evidence in on the ground that the jury could consider the *purchase* as evidence of the physical condition of the deceased. Hunt further testified that he and Evan drank alcohol at the party.

Throughout the trial, as well as in these motions, plaintiff objected to the admission of evidence of Evan's alcohol purchase and consumption on the ground that it was remote in time, irrelevant, unduly prejudicial, and constituted unfair surprise. On appeal, plaintiff argues that the mischief of allowing such testimony was to introduce a shadow defense to which the plaintiff could not respond. It demeaned and besmirched the reputation of the deceased by implying that an orgy had occurred the night before the accident in which Evan was a participant.

■ " 'Relevant evidence' means evidence having any tendency in reason to prove or disprove the existence of any material fact." Utah R.Evid. 1(2) (repealed).[2] It advances the inquiry, is probative, and is therefore prima facie admissible. *Carlson v. Piper Aircraft Corp.,* 57 Or.App. 695, 646 P.2d 43 (1982) (citing McCormick on Evidence § 185 (2d ed. 1972)). If evidence has some probative value, but has a tendency to unduly prejudice or confuse the issues or to mislead the jury, the trial court

**2.** Since superseded by Rule 401 of the Utah Rules of Evidence, effective September 1, 1983, defining relevant evidence as follows: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

must balance the probative value against those countervailing factors to determine whether the evidence should be admitted. "Precedent," concluded the court in *Carlson*, "is of little value in reviewing such cases.... We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range." *Id.* 646 P.2d at 46–47 (citing *Carter v. Moberly*, 263 Or. 193, 501 P.2d 1276 (1972)). The defendants cite *Bach v. Penn Central Transportation Co.*, 502 F.2d 1117 (6th Cir.1974), for the proposition that testimony tending to show that a decedent had been drinking before a fatal accident is generally relevant to the jury's consideration of contributory negligence. However, the court held that evidence admitted on the decedent's drinking should have been excluded because it was too remote from the time of death.

> [T]he relevance of such evidence disappears if the drinking occurred so long before the accident that the alcohol could no longer have any effect on the decedent's conduct. The probative value of such evidence must be closely scrutinized to avoid the possibility of prejudice to the party charged with negligence.

*Id.* at 1121. The excluded evidence was that the decedent, who was accidentally killed on Saturday evening, had gone on a drinking spree the previous Thursday evening and early Friday morning. The defendant's expert testified that any alcohol consumed by the decedent on his spree could not still be present in his blood on Saturday evening. Since the testimony of the drinking spree could have effected the jury's high apportionment of negligence to the decedent, the court held that its admission constituted reversible error.

In *Patricia R. v. Sullivan*, Alaska, 631 P.2d 91 (1981), the mother of a child brought suit against their landlords for burns the child sustained, allegedly caused by a heater in the child's bedroom. The defendant adduced testimony that the plaintiff had engaged in prostitution in the months prior to the accident. The trial court took the view that from that testimony one could logically infer that she was acting as a prostitute at the time of the accident and thus was either absent or inattentive to her child's well being. The court, however, admonished the jury that "even if prostitution is admitted, it is not suggested or admitted for the purpose of showing that this witness, or any other, is a bad person. We're trying this case on the facts. Not the reputation of the witness." *Id.* at 95 n. 2. Nonetheless, there were references to her prostitution on cross-examination and in final argument, going well beyond the limited purpose for which the trial court had admitted the evidence. Consequently, the reviewing court held that the admission was prejudicial and ordered a new trial.

■ The instant case was similarly fraught with the danger of dogmatic judgment. When the motion in limine was argued, counsel for defendants urged that testimony of what occurred the previous evening at the canyon party should be admitted for the limited purpose of showing that Evan may have been physically exhausted and suffering from a hangover at the time he drowned. The trial judge, as reflected by his comments, apparently intended to let that testimony into evidence only for that limited purpose. However, the jury was never told that. The trial court made no attempt to have the jury consider the volatile testimony for one purpose but not for another, as in *Patricia R. v. Sullivan*. The judge not only failed to make that distinction to the jury, he compounded the error. In the presence of the jury, he overruled an objection to the testimony of Rod Hunt concerning the boys' illegal liquor purchase, stating that the jury could consider the purchase as evidence of Evan's physical condition when he drowned. No evidence was offered to show the amount of liquor Evan consumed or to show the amount of alcohol, if any, still in his body when he drowned. Without limitation or guidance from the court, the jury was left to draw unrestricted conclusions from testimony that Evan had consumed an unknown quantity of liquor the evening before. No expert testimony as-

sisted the jury on the lasting effect of the alcohol imbibed the previous evening.

We must now determine whether this erroneously admitted testimony "had a substantial influence in bringing about the verdict" such that we must set aside the jury verdict. *Bambrough v. Bethers, supra.* In their closing argument to the jury, defendants stressed that their conduct did not in any way cause Evan's death. They discounted the importance of safety equipment missing from the boat and the effect of Kevin's operation of the boat. Instead, they argued that Evan's conduct caused his own death. First, they pointed out that he had slept only about one hour during the thirty-six hour period prior to his drowning. Second, they argued that a water skier should not ski beyond his physical endurance and that partying and consuming alcoholic beverage would have a "negative effect" on a skier's endurance. Last, they urged that Evan did not respond with reasonable care to the emergency situation he was in. They pointed to the testimony that Evan took his life jacket off and, when given another by the girls, made no effort to adjust it. After slipping it on, instead of staying with Kevin, who was wearing a good-fitting jacket, Evan swam away from him.

We do not know why the jury found Evan's negligence to be the sole proximate cause of his death. It may have been because of his removing his life jacket. If so, evidence of his drinking was not prejudicial. However, we have no way of knowing this and cannot presume that the jury was not influenced by the evidence of his drinking. Yet, as we have pointed out, the evidence of his consumption was highly indefinite and inconclusive. The jury's verdict could well have been the result of shifting its attention away from the facts of the case and judging every one of Evan's actions before and after the disabled craft drifted away as a natural consequence of alcohol-induced debility. The probative value of testimony of so little substance coming in with such great latitude was clearly outweighed by the prejudicial effect it may have had on the jury.

The distraction caused by the erroneous admission of evidence is evident in the following: After the trial court admitted into evidence testimony that Evan had illegally purchased liquor and had consumed some of it at the canyon party, the plaintiffs produced rebuttal testimony. This testimony was that Evan "didn't drink very much," that he talked reasonably and rationally during the evening, and that he and a young friend made a pact that they would not thereafter "party anymore," that they would change their lives, and that they would prepare to serve missions for their church. While Evan's character was not on trial, it became an issue after the unbridled admission of testimony of Evan's illegal purchase and consumption of alcohol.

Also, that testimony was prejudicial because there was no evidence that Evan showed any signs of a hangover during the day. His vigorous activity in skiing was inconsistent with any impairment. He showed no exhaustion until he was fighting high waves in the lake when he attempted to reach the disabled boat. Significantly, although there was no testimony that Kevin had consumed any liquor at the party, he was also unable to reach the drifting boat. When the two boys decided to strike out for the west shore of the lake, Evan swam so far ahead that Kevin tried to slow him down so he could catch up, but Evan "yelled encouragement back and kept on." The erroneous admission of the testimony might be compared to a drop of ink placed in a vessel of milk. It cannot long be seen, but it surely remains there to pollute its contents. We hold that in these circumstances, the trial court committed reversible error in admitting the testimony of Evan's illegal purchase and consumption of alcoholic beverages.

The remaining three issues can be dealt with briefly for the guidance of the trial court on retrial.

■ The trial court properly refused to instruct the jury that there was a statutory requirement that an anchor be carried

aboard the boat. U.C.A., 1953, § 73–18–8 is silent on the requirement of an anchor, although subsection (4) calls for such additional equipment designed to promote the safety of navigation and of persons as the Commission (Division of Parks and Recreation) may find to be proper and for which it has provided in its rules and regulations. 4 Utah Admin.R., § A60–01–3(3)(b)(12) (1975) prescribes the use of an anchor: "Anchors—All vessels, except those capable of being safely beached, and all motor boats of Class 2 and 3 shall be equipped with an anchor and line of sufficient weight and length to securely anchor such vessel."

Because defendants' boat was a Class 1 motorboat, an anchor would be statutorily required only if the boat could not be safely beached. Plaintiff's expert witness disputed the capability of safe beaching of the boat; defendants' asserted it. The issue thus became a question of fact properly submitted to the jury without the instruction requested by the plaintiff.

■ Plaintiff also requested an instruction on the presumption that the decedent had exercised due care for his own safety, which the trial court refused to give. *DeMille v. Erickson*, 23 Utah 2d 278, 462 P.2d 159 (1969), is dispositive on that issue, holding that once the opposing party produces a prima facie case as to the nonexistence of that presumed fact, the presumption disappears. Defendants adduced evidence that Evan had discarded his lifejacket in order to reach the boat. Whether that was negligence under the circumstances was a question of fact, and the presumption thus disappeared.

■ The trial court erred in refusing to give the jury plaintiff's requested instruction on the vicarious liability of the owners of a vessel for the action of a minor operator imposed by U.C.A., 1953, § 73–18–18. Statutory liability was the basis of the plaintiff's case, and the refusal to instruct deprived the plaintiff of a possible theory of liability. *See Ratcliff v. United States Automobile Association*, La.App., 180 So.2d 58 (1965). Although defendants point out that the jury found all defendants negligent and argue that any error was thus harmless, the instructions leave doubt in our minds that the jury understood that the defendant owners were liable for any negligence of Kevin in his operation of the boat.

Remanded for a new trial. Costs awarded to plaintiff.

STEWART and DURHAM, JJ., and VENOY CHRISTOFFERSON, District Judge, concur.

HALL, Chief Justice (dissenting):

I do not join the opinion of the Court because I remain unpersuaded of the existence of prejudicial error.

The majority concedes that the jury may well have concluded that Evan's act of negligence in discarding his life jacket was a proximate cause of his death and, if so, the admission of evidence of his alcohol consumption would not constitute prejudicial error. Nevertheless, the Court overturns the jury verdict using a nebulous process of rationalization which overlooks the fact that there is a considerable amount of additional evidence of negligence on the part of Evan that amply supports the verdict of the jury.

The record reflects that Evan had slept very little during the thirty-six hours before his death; that he over-exerted himself by water skiing beyond reason; that he refused to stop skiing when requested to do so, notwithstanding the windy conditions; that he discarded one life preserver; that he failed to utilize the replacement life preserver; and that he left Kevin Wistisen behind during their effort to swim ashore. This evidence also supports the jury verdict on both the negligence and causation issues, all without the necessity of any reliance upon the alcohol consumption evidence.

Assuming, without deciding, that the trial court erred in admitting the evidence of alcohol consumption, it was harmless error. In order to justify reversal, substantial and prejudicial error must be shown that would

give rise to a reasonable likelihood that in the absence of error, the result would have been different.[1] The facts of this case belie such a showing.

I also take a contrary view than does the Court in regard to the contention that the trial judge erred in refusing to give the jury an instruction on the vicarious liability of the owners of the boat.[2]

The majority expresses anxiety as to whether the jury understood that the defendant owners of the boat were liable for any negligence of Kevin Wistisen in his operation of the boat. However, a review of the record reveals that at the time counsel was taking exceptions to the court's instructions to the jury, the court expressed its view that the substance of the verdict form had the effect of advising the jury, as a matter of law, of the vicarious liability of the owners of the boat. Although counsel for plaintiff took exception to the ruling, the record further reflects that in the presentation of his closing argument to the jury, counsel in fact accepted the court's interpretation of the effect of the jury verdict. Counsel specifically advised the jury that "[i]f you entrust a boat, a motorboat, to a person under the age of eighteen years that the negligence, if any, of the operation of the boat is chargeable to the owner of the boat.... The court has instructed you as a matter of law that is the case." It is therefore abundantly clear that the case was presented to the jury on plaintiff's theory of the case.

The jury having found both defendants to have been negligent, and ample basis being in the record to support the jury verdict on the theory of vicarious liability, it is clear that the court did not err in its instructions to the jury.

I would affirm the jury verdict.

ZIMMERMAN, J., does not participate herein.

1. Utah R.Civ.P. 61; *Ortega v. Thomas,* 14 Utah 2d 296, 300, 383 P.2d 406, 408 (1963).

2. Vicarious liability was premised on the fact that the boat was entrusted to one under eighteen years of age.